```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


COURTNEY L. CANFIELD,

                    Plaintiff,

vs.                                Case No. 15-4918-SAC-KGS

OFFICE OF THE SECRETARY OF STATE
FOR THE STATE OF KANSAS and
ERIC K. RUCKER, in his official
Capacity,

                    Defendants.
```

**MEMORANDUM AND ORDER**

Plaintiff alleges that she was discharged from her job because she did not go to church. Plaintiff advances claims under: 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>; and the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 <u>et seq.</u> The defendants in this case are the Office of the Secretary of State for the State of Kansas and Eric Rucker, the Assistant Secretary of State for the State of Kansas. Rucker is being sued in his official capacity. This case is now before the court upon defendants' motion for summary judgment.

I. SUMMARY JUDGMENT STANDARDS

Defendants have the burden on a summary judgment motion to show that the record establishes they are entitled to judgment as a matter of law because there is no genuine dispute as to any

1

material fact. FED.R.CIV.P. 56(a). The court views the evidence in the light most favorable to plaintiff, as the nonmoving party, and draws all reasonable inferences in plaintiff's favor. Adler v. WalMart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Nevertheless, plaintiff "must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).

II. UNCONTROVERTED FACTS

The following facts are considered uncontroverted solely for the purposes of deciding the summary judgment motion.

On January 31, 2013, plaintiff was hired as a part-time Accounts Clerk in the Election and Legislative Matters Division of the Secretary of State's Office. Before plaintiff was hired, defendant Rucker had a phone conversation with his friend and long acquaintance Margie Canfield, plaintiff's grandmother. They spoke about the possibility of plaintiff obtaining a job in the office. Plaintiff, like all employees in the office, served at the pleasure of the Kansas Secretary of State.

Plaintiff worked in the Election and Legislative Matters Division until approximately June 9, 2013. Around June 10, 2013, plaintiff was transferred to a full-time position in the Business Services Division of the Kansas Secretary of State Office. Before the transfer, defendant Rucker and Chief of

Staff Nancy Bryant had received complaints that plaintiff was loud in the office and often absent from her desk. Defendant Rucker asked Kathy Sachs, the Deputy Assistant Secretary of State for the Business Services Division to support transferring plaintiff to the Business Services Division.

Sachs and Bryant met with plaintiff on June 10, 2013 about the transfer. Plaintiff was advised that she was being offered a full-time position in the Business Services Division on a four to six week trial basis. Plaintiff was counseled: that she would have to speak quietly and less often within the office; that she would have to sit at her desk; that she should reduce her cell phone usage; that she should refrain from having food at her desk; and that she should inform supervisors of future absences by phone instead of by text message. Plaintiff completed her trial period and secured the full-time position in the Business Services office.

The procedure for providing notification of the use of sick leave is set out in the Employee Handbook for the Kansas Secretary of State Office. It is required that employees speak personally with the division deputy or immediate supervisor unless such personal contact is medically impossible. Plaintiff's immediate supervisor was Jackie Carlson. Carlson's supervisor was Kathy Sachs.

In June, July, and August, plaintiff was absent from work a number of times.[1] She occasionally notified her supervisors of absences by email instead of personally contacting them. She had been cautioned not to do this. A meeting with plaintiff was conducted on August 27, 2013. Plaintiff was told that she was absent more than she should be and that she needed to make sure that she had scheduled as opposed to unscheduled leave. In September, October, and November, plaintiff also had numerous absences from work.[2]

The personnel policy of the office discouraged or prohibited employees from using office telephones to make or receive personal phone calls and from the excessive use of personal cell phones. Plaintiff received phone calls from her boyfriend while she was at work. Her boyfriend also came to the office to see plaintiff on five to ten occasions.

On November 12, 2013, Sachs sent an email to all employees in the Business Services Division cautioning that cell phones are not to be used, even for texting, unless the employee is on break or lunch. The email stated that personal phone calls were to be limited to brief conversations and making or receiving personal phone calls every day was excessive. An hour after sending the email, Sachs emailed plaintiff to put her cell phone

---

[1] The uncontroverted facts appear to show that during these months plaintiff was absent approximately 12 times and a total of 52 hours.
[2] The uncontroverted facts appear to show that during these months plaintiff was absent approximately 16 times for a total of 46½ hours.

in her purse. Plaintiff responded that she put her phone in her pocket and that it would stay there. On November 14, 2013, an employee complained that plaintiff was texting at her desk.

On November 15, 2013, plaintiff entered Sachs' office without permission and used her cell phone to speak to her physician's office. Another employee told plaintiff's supervisor, Jackie Carlson, that plaintiff was using Sachs' office to make a personal phone call. Carlson asked plaintiff why she did this. Carlson also told plaintiff that she could not be in Sachs' office without permission with the door closed while Sachs was out of the office. Shortly thereafter, plaintiff accused another employee of using Sachs' office to make a personal phone call. The employee denied this, although plaintiff persisted with the accusation.

About that time, Carlson reported to Sachs that plaintiff's "behavior needs to be addressed and taken care of. Her derogatory remarks to [two employees] have to be fixed. It is causing a hostile working environment." Sometime between 9 and 10 a.m., Sachs met with plaintiff and sent plaintiff home because she had caused a "ruckus" in the office.

At 11:59 a.m., plaintiff emailed defendant Rucker. Plaintiff acknowledged that she was sent home from work for causing a ruckus with another employee, but tried to explain her point of view that she was being criticized for something she

5

thought other employees had done. On the afternoon of November 15, 2014, Sachs, Bryant and Rucker conferred regarding plaintiff's employment. Sachs recommended that plaintiff be terminated because of disruptive behavior in the workplace, poor attendance, excessive personal phone calls, and unaccounted-for time away from her desk. Rucker decided to terminate plaintiff. Sometime during the early evening of November 15, defendant Rucker went to Margie Canfield's house and advised Margie of plaintiff's termination. Margie Canfield has testified that defendant Rucker told her plaintiff was terminated for three reasons: 1) for being a diversion and away from her desk too frequently; 2) for being mean to a co-worker; and 3) for not going to church. Plaintiff was made aware of her termination the following Monday, November 18, 2013.

Kansas Secretary of State Kobach occasionally held religious devotional gatherings in his office when his schedule permitted on sporadic Wednesday evenings after the close of business. Employees were verbally invited to attend. Plaintiff was invited to attend between five and ten times. Plaintiff did not attend any of the gatherings. No employee told plaintiff she would be terminated for failing to attend the devotional meetings. Defendant Rucker attended on seven or eight occasions. Sachs attended once.

Defendant Rucker never discussed church attendance with plaintiff. Neither did Carlson. Plaintiff did not believe that Sachs had a problem with plaintiff's non-attendance at after-hours devotional meetings and plaintiff has never observed another employee being treated differently because they did not attend church or the after-hours devotional gatherings.

III. THERE IS DIRECT EVIDENCE OF DISCRIMINATION WHICH CREATES A MATERIAL ISSUE OF FACT FOR TRIAL ON PLAINTIFF'S TITLE VII CLAIM.

Title VII makes it illegal for an employer "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Religion includes "'all aspects of religious observance and practice, as well as belief.'" Shapolia v. Los Alamos Nat. Lab., 992 F.2d 1033, 1036 (10th Cir. 1993)(quoting 42 U.S.C. § 2000e(j)). "When a plaintiff offers direct evidence of discrimination in a Title VII claim, her claim may move forward without being subjected to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013). "'Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'" Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1117 (10th Cir. 2007)(quoting Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007)). "Comments . . . that reflect

7

personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs." Tabor, 703 F.3d at 1216. Also, "discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision. . . . [I]f the content and context of a statement allow it to be plausibly interpreted in two different ways — - one discriminatory and the other benign — - the statement does not qualify as direct evidence." Id. (citation omitted).

For the purposes of deciding the summary judgment motion, defendants acknowledge that the court must accept as uncontroverted that defendant Rucker stated to plaintiff's grandmother close to the time that the decision was made that plaintiff was terminated in part because she did not go to church. Doc. No. 45, p. 15. Defendants contend that this alleged statement is not direct evidence of discrimination because defendant Rucker was not the real decisionmaker who terminated plaintiff. Defendants assert that Kathy Sachs was the decisionmaker and that defendant Rucker merely implemented or rubber-stamped her decision. This is a fact question. See Kramer v. Logan County School District No. R-1, 157 F.3d 620, 624-25 (8th Cir. 1998)(in a Title VII action, the question of whether school board rubber-stamped an allegedly biased

8

recommendation to non-renew or made an independent unbiased investigation was appropriately presented to a jury).

The summary judgment record includes testimony from defendant Rucker: that he made the decision to terminate plaintiff; that he thought about it after meeting with Sachs; that he discussed it with Sachs; that Sachs made a recommendation, but he made the decision; and that after meeting with Sachs and Bryant about the recommendation, he gave the matter serious consideration over some time before adopting it. Doc. No. 45-2, at pp. 49-50 of deposition; Doc. No. 50-4, p. 3 of affidavit. There is contradictory evidence in the record. Defendants claim that defendant Rucker delegated the decisionmaking power over plaintiff's job fate to Sachs, who was unbiased. But, Rucker's testimony creates a material issue of fact as to whether defendant Rucker was the decisionmaker or in some fashion a proximate cause of the adverse employment action in this case.

In Staub v. Proctor Hospital, 562 U.S. 411, 419-20 (2011), the proximate cause standard was employed by the Supreme Court in a subordinate bias or "cat's paw" case.[3] The Court observed:

---

[3] A "cat's paw" case is one in which the plaintiff alleges that the bias of a subordinate employee caused an adverse employment action even though the formal decisionmaker did not hold such bias. See EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 484 (10th Cir. 2006). Defendants ask the court to analyze this case as a reverse cat's paw case where the decision to terminate was caused by an unbiased subordinate, not the formal decisionmaker against whom there is evidence of bias. Defendants do not cite any examples of cases expressly analyzed as reverse cat's paw cases.

> [I]t is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm. Proximate cause requires only "some direct relation between the injury asserted and the injurious conduct alleged," and excludes only those "link[s] that are too remote, purely contingent, or indirect." Hemi Group, LLC v. City of New York, 559 U.S. 1, 130 S.Ct. 983, 989, 175 L.Ed.2d 943 (2010)(internal quotation marks omitted). We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias "remote" or "purely contingent." The decisionmaker's exercise of judgment is also a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. See Sosa v. Alvarez-Machain, 542 U.S. 692, 704, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A cause can be thought "superseding" only if it is a "cause of independent origin that was not foreseeable." Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996)(internal quotation marks omitted).

Id.[4]

As noted above, there is evidence in the record to support a claim that defendant Rucker's actions were a proximate cause of plaintiff's termination. Defendants suggest that Rucker cannot have caused plaintiff's termination because he did not conduct an independent investigation. Doc. No. 51, pp. 14-15. While such a bright line test might be more easily applied, the Staub opinion has rejected the notion that a so-called independent investigation necessarily precludes a cat's paw

---

[4] Staub is not a Title VII case, but Staub's holdings have been applied to Title VII litigation. E.g., Lobato v. New Mexico Environment Dept., 733 F.3d 1283, 1294 (10th Cir. 2013).

10

claim.  562 U.S. at 420-21.  Similarly, a fact issue remains in this case as to whether Rucker's actions were a proximate cause of plaintiff's termination.

The court has examined the cases cited by defendants where summary judgment was sustained and the cases cited by plaintiff where summary judgment was denied.[5]  The court finds that the facts in the cases cited by plaintiff are more analogous to the facts in this summary judgment record when the court construes the evidence in a light favorable to plaintiff.

Defendants also argue that Rucker's alleged remark to Margie Canfield is a stray remark not connected to the termination decision.  The court rejects this argument.  The timing of the alleged statement and its context does not permit a benign inference.  A relatively short time after deciding to terminate plaintiff, the individual who has stated he made the decision, told a witness that part of the reason for terminating plaintiff was that she did not go to church.  This statement, if believed, proves the fact of discriminatory termination without inference or presumption.  Therefore, it amounts to more than a stray remark.  Cf., <u>Clark v. Cache Valley Elec. Co.</u>, 573

---

[5] Defendants have cited such cases as: <u>Power v. Koss Const. Co., Inc.</u>, 499 F.Supp.2d 1194 (D.Kan. 2007); <u>Powell v. Bob Downes Chrysler-Plymouth, Inc.</u>, 865 F.Supp. 1340 (E.D.Mo. 1994); and <u>Shorter v. ICG Holdings, Inc.</u>, 188 F.3d 1204 (10th Cir. 1999).  Plaintiff has cited such cases as <u>Berroth v. Farm Bureau Mut. Ins. Co., Inc.</u>, 232 F.Supp.2d 1244 (D.Kan. 2002); <u>Markham v. Boeing Co.</u>, 2011 WL 6217117 (D.Kan. 2011); and <u>Cox v. U.S.D. 255</u>, 428 F.Supp.2d 1171 (D.Kan. 2006).

Fed.Appx. 693, 702 (10th Cir. 2014)(evidence that plaintiff was told by employer's counsel and chief operating officer that he was fired because of a complaint letter is direct evidence of retaliation, although not illegal retaliation under the facts); Tabor, 703 F.3d at 1217 (sexist comments during promotion interview considered direct evidence of discrimination in denial of promotion, not stray remarks); Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir.) cert. denied, 528 U.S. 813 (1999)(letter explaining what a jury could consider to be retaliatory reasons for termination, when written close in time to discharge, is direct evidence of retaliation).

IV. PLAINTIFF'S § 1983 CLAIMS, HER KAAD CLAIMS, AND HER TITLE VII CLAIM AGAINST DEFENDANT RUCKER SHALL BE DISMISSED.

Defendants argue that the Eleventh Amendment bars plaintiff's § 1983 claim and KAAD claim against the Office of the Secretary of State and Eric Rucker in his official capacity. This argument is correct. The Supreme Court has interpreted the Eleventh Amendment to bar suits in federal court against a nonconsenting state brought by the state's own citizen or citizens of another state. Arbogast v. Kansas, Dept. of Labor, 789 F.3d 1174, 1181 (10th Cir. 2015). Congress may abrogate states' Eleventh Amendment immunity by exercising its authority under section 5 of the Fourteenth Amendment. Id. Congress did so when it amended Title VII to include state and local

12

governments as "employers." <u>Crumpacker v. Kansas Dept. of Human Resources</u>, 338 F.3d 1163, 1169 (10th Cir. 2003) <u>cert. denied</u>, 540 U.S. 1180 (2004). Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983. <u>Ellis v. University of Kansas Medical Center</u>, 163 F.3d 1186, 1196 (10th Cir. 1998). Eleventh Amendment immunity applies as well to state law claims, such as KAAD claims against the State of Kansas agencies. See <u>Richardson-Longmire v. State Adjutant General</u>, 1999 WL 156168 *7-8 (D.Kan. 3/8/1999) <u>aff'd</u>, 1999 WL 1032975 (10th Cir. 1999) <u>cert. denied</u>, 520 U.S. 1266 (2000); <u>Ballou v. University of Kansas Medical Center</u>, 871 F.Supp. 1384, 1391 (D.Kan. 1994). State officials sued in their official capacity are also protected by Eleventh Amendment immunity. A suit against an individual in his or her official capacity is a suit against the official's office and is no different from a suit against the state. See <u>Hutto v. Finney</u>, 437 U.S. 678, 699-700 (1978). Therefore, plaintiff may not bring a KAAD claim against defendant Rucker in his official capacity in federal court. <u>McCue v. State Dept. of Human Resources</u>, 1995 WL 522896 *2 (D.Kan. 8/2/1995); <u>Ballou</u>, 871 F.Supp. at 1391; <u>Schloesser v. Kansas Dept. of Health and Environment</u>, 766 F.Supp. 984, 989 (D.Kan. 1991) <u>rev'd on other grds</u>, 991 F.2d 806 (10th Cir. 1993).

Plaintiff argues that under <u>Ex parte Young</u>, she may bring a § 1983 claim for injunctive or declaratory relief against

defendant Rucker in his official capacity. Defendants point out, however, that plaintiff has not preserved a claim for injunctive or declaratory relief in the pretrial order. Therefore, a § 1983 claim for injunctive or declaratory relief no longer exists in this case. See FED.R.CIV.P. 16(d); Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002); Clean Harbors, Inc. v. CBS Corp., 875 F.Supp.2d 1311, 1319 (D.Kan. 2012).

Finally, plaintiff concedes that she does not have a Title VII claim against defendant Rucker in his official capacity. Doc. No. 50, p. 18. This is consistent with the holdings in McCafferty v. Preiss Enterprises, Inc., 534 Fed.Appx. 726, 732 (10th Cir. 2013) and Blackmon v. U.S.D. 259, 769 F.Supp.2d 1267, 1272 n.26 (D.Kan. 2011)(citing Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996)).

V. CONCLUSION

In conclusion, defendants' motion for summary judgment (Doc. No. 44) is granted in part and denied in part. Plaintiff's claims against defendant Rucker are dismissed and plaintiff's § 1983 and KAAD claims are dismissed against the Office of Secretary of State. Plaintiff's Title VII claims against the Office of Secretary of State may proceed.

**IT IS SO ORDERED.**

Dated this 30th day of August, 2016, at Topeka, Kansas.

                        s/Sam A. Crow  
                        Sam A. Crow, U.S. District Senior Judge