**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| COURTNEY L. CANFIELD,      )<br>                                                    )<br>             Plaintiff,               )<br>                                                    )<br>   vs.                                           )          Case No. 5:15-cv-04918-DDC-KGS<br>                                                    )<br>OFFICE OF THE SECRETARY OF STATE  )<br>FOR THE STATE OF KANSAS     )<br>                                                    )<br>            Defendant.              ) | |

## DEFENDANT'S MOTION IN LIMINE

Defendant Office of the Secretary of State for the State of Kansas (KSOS Office) moves the Court for an Order in Limine restricting Plaintiffs, their counsel, or any witness called or cross-examined by plaintiff from making any remark, statement, inquiry, or other reference to the jury or offering any exhibit or tangible evidence regarding the matters identified below.

### NATURE OF THE CASE

Plaintiff asserts a claim under Title VII against the KSOS Office, alleging she was discharged based upon a religiously discriminatory animus. Specifically, plaintiff alleges that her termination was motivated, in part, by her failure to attend church.

### ISSUES PRESENTED

1. Evidence of devotional meetings at the KSOS office is irrelevant and should be excluded as prejudicial.

2. Evidence of religious materials distributed by Dave DePue is irrelevant and should be excluded as prejudicial.

3. Lay opinions regarding the propriety, or lack, of religious devotionals or the distribution of religious materials in the KSOS office should be excluded.

4. Evidence regarding mediation or settlement negotiations is irrelevant, prejudicial, and inadmissible under F.R.E. 408.

5. Arguments, statements, or comment regarding attendance or non-attendance of Kobach is irrelevant and prejudicial and should be excluded.

6. Lay opinions regarding the veracity, reliability, trustworthiness, or other similar attributes of witnesses are inadmissible and should be excluded.

7. Argument or mention of alleged embezzlement, bookkeeping irregularities, or financial difficulties experienced by the Kansas Republican Party is irrelevant and unduly prejudicial and should be excluded.

8. Argument, statement, comment or evidence that Rucker asked Margie Canfield to terminate plaintiff's employment should be excluded as irrelevant, confusing, and misleading.

9. Argument or evidence of a newspaper article by Ari Berman of the NY Times or any other news publication or media coverage regarding Secretary of State Kobach should be excluded as irrelevant and unduly prejudicial.

10. Argument or evidence related to Rucker's attorney disciplinary proceedings should be excluded as irrelevant and unduly prejudicial.

11. Argument or evidence related to Secretary Kobach's conduct in unrelated litigation and any disciplinary proceedings arising therefrom should be excluded as irrelevant and unduly prejudicial.

12. Evidence, mention, or argument related to the content of conversations between KSOS employees and in-house counsel concerning plaintiff's termination and subsequent allegations of religious discrimination should be excluded under F.R.E. 502.

13. Evidence or argument concerning the wisdom or fairness of the decision to terminate plaintiff or the necessity or potential of utilizing progressive discipline or less severe remedial measures should be excluded as irrelevant, confusing, and misleading.

14. Evidence or argument of any treatment related to any claim for non-economic damages or expert testimony involving the same should be excluded on the basis of unfair surprise.

15. Evidence, comment, or argument regarding front pay should be excluded.

16. Evidence, comment, or argument regarding discovery objections should be excluded.

## OUTLINE OF INADMISSIBLE EVIDENCE

Defendants request the Court enter a limine order excluding the evidence described below and all evidence, argument, statements or comment related thereto.

**Devotionals**

1. During depositions, KSOS employees were asked whether prior Secretaries of State had held religious devotionals in the office after the close of business. (Dilliehunt Dep. 10:17-10:21; Bryant Dep. 44:19-45:24; Rucker Dep. 24:20-22; Kobach Dep. 26:23-27:25, 55:10-56:1). KSOS employees were also asked whether other government officials had ever held devotional, prayer, or religious services in the office before or after a typical workday. (Bryant Dep. 45:10-16; Dilliehunt Dep. 10:17-11:3; Rucker Dep. 20:15-24:8).

2.      KSOS employees were asked whether they had ever attended one of the religious devotionals held in the Secretary of State's Office, by whom they were invited, the names of other employees that were present, and what usually occurred during these gatherings. (Dilliehunt Dep. 9:5-9:24; Sachs Dep. 36:14-37:20; Rucker Dep. 30:12-32:9; Kobach Dep. 24:11-25:25, 28:1-15).

3.      Secretary Kobach was questioned about how often the devotionals were held in his office in 2014 through 2017 (after plaintiff's discharge) and the reasons as to why the devotionals may have occurred more or less frequently during this time period. (Kobach Dep. 34:2-35:15).

4.      KSOS employees were asked their opinions as to the propriety of holding an after-hours religious devotional in the workplace. (Rucker Dep. 28:1-10; Kobach Dep. 28:16-29:13).

**Distribution of Religious Materials**

1.      During depositions, KSOS employees were asked whether religious materials were ever distributed during the tenure of prior Secretaries of State. (Dilliehunt Dep. 10:8-16; Rucker Dep. 24:14-19). KSOS employees were also asked whether religious materials were distributed during Secretary Kobach's tenure. (Dilliehunt Dep. 8:13-9:4; Rucker Dep. 28:20-30:11; Bryant Dep. 43:18-44:14; Sachs Dep. 36:3-14; Kobach Dep. 29:15-31:10). Assistant Secretary of State Eric Rucker was questioned extensively as to whether religious literature or prayer guides were distributed in other government workplaces where Rucker had worked. (Rucker Dep. 20:5-24:13).

2.      KSOS employees were asked about the propriety of distributing religious materials in the workplace. (Rucker Dep. 28:11-19; Kobach Dep. 32:18-33:4).

3.      KSOS employees testified that Dave DePue, a local pastor that is not employed by the KSOS Office, would come to the office and distribute religious literature to certain employees. (Rucker Dep. 29:13-30:11; Sachs Dep. 36:3-13; Dilliehunt Dep. 8:13-9:4; Bryant Dep. 43:18-44:10; Kobach Dep. 30:12-31:16). The religious literature distributed by Mr. DePue was unrelated

to the after-hours devotional sometimes held in the Secretary of State's Office. (Sachs Dep. 38:10-15; Rucker Dep. 30:17-31:5).

**Financial Difficulties or Fiscal Mismanagement**

1. During his deposition, Secretary of State Kobach was asked about his tenure as Chairman for the Kansas Republican Party and whether the party experienced financial problems during that time. (Kobach Dep. 19:21-25). Secretary Kobach was asked whether those financial problems involved embezzlement. (Kobach Dep. 20:1-3). Secretary Kobach explained that the financial problems were attributable to unorganized and perfunctory bookkeeping performed by the executive director of the party. (Kobach Dep. 20:11-21).

**Nature of Agreement between Rucker and Margie Canfield**

1. Rucker testified in deposition that, when he hired plaintiff at the KSOS Office, he did so under an agreement with plaintiff's grandmother, Margie Canfield. Pursuant to the terms of that agreement, if plaintiff was discharged, Margie would inform plaintiff about it. (Rucker Dep. 61:2-11)

2. Witnesses were asked questions establishing or insinuating that the nature of the agreement between Rucker and Margie was for Margie to actually terminate plaintiff's employment as opposed to merely breaking the bad news to plaintiff should termination occur. (Sachs Dep. 41:3-15).

**Opinions regarding Witness Veracity**

1. During depositions, Secretary of State Kobach and Deputy Secretary of State Kathy Sachs were asked to opine on the honesty, reliability, and trustworthiness of KSOS employee Karen Dilliehunt. (Kobach Dep. 53:8-21; Sachs Dep. 49:25-51:16, 52:3-53:3).

2. Similarly, Eric Rucker was asked to opine on the honesty, trustworthiness, and reliability of plaintiff's grandmother, Margie Canfield. (Rucker Dep. 25:6-27:2).

**Media Coverage regarding Secretary Kobach**

1. During his deposition, Secretary Kobach was asked about a June 13, 2017 NY Times article that was authored by Ari Berman. (Kobach Dep. 56:15-57:22) The article covered Secretary's Kobach's personal background, work experience, public policy initiatives, and his appointment and role in President Trump's Commission on Election Integrity.[1]

**Mediation/Settlement Discussions**

1. During his deposition, Secretary Kobach was asked whether he was aware that the case was set for mediation in May of 2016. (Kobach Dep. 57:24-58:12). Plaintiff's counsel posed several questions concerning the premature or unsuccessful conclusion of the mediation due to Assistant Secretary of State Rucker's absence. (Kobach Dep. 58:9-59:20).

**Rucker Attorney Disciplinary Proceedings**

1. During his deposition, Eric Rucker was asked about events involving attorney disciplinary proceedings that had been filed against Rucker. (Rucker Dep. 4:25-5:14). Specific details were sought concerning those proceedings, including the events or circumstances that precipitated the disciplinary proceedings, when those proceedings occurred, who litigated the matter, and the resolution of the action. (Rucker Dep. 5:15-6:15).

2. Rucker explained that the disciplinary action arose out of responses he provided to the Kansas Supreme Court during oral argument in the *Alpha Medical Clinic* case. *See Alpha Medical Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006). (Rucker Dep. 6:8-15).

---

[1] A copy of the NY Times piece is accessible online at: https://www.nytimes.com/2017/06/13/magazine/the-man-behind-trumps-voter-fraud-obsession.html

3. The disciplinary proceedings resulted in the imposition of an informal admonition of Rucker. (Rucker Dep. 6:6-7).

**Attorney-Client Privileged Communications**

1. During her deposition, Karen Dilliehunt was asked about conversations she had with in-house attorneys for the KSOS Office during a meeting that occurred sometime after plaintiff's discharge. (Dilliehunt Dep. 11:13-13:2).

2. Dilliehunt was asked whether attorneys inquired about plaintiff's religious affiliation during this meeting. (Dilliehunt Dep. 13:3-4). Defense counsel objected that the communications were subject to the attorney-client privilege. (Dilliehunt Dep. 13:5-16:21).

**Progressive Discipline or Other Remedial Measures**

1. During depositions, KSOS employees were asked about the discipline policy outlined in the KSOS Office Employee Handbook. (Sachs Dep. 23:6-24:11, 28:10-29:2; Rucker Dep. 53:2-14; Bryant Dep. 36:1-37:4; Kobach Dep. 42:25-44:9).

2. The KSOS Office Employee Handbook provides that supervisors have discretion whether to use or not use the discipline policy contained therein. (Rucker Dep. 53:23-25).

**Treatment Related to Non-Economic Damages**

1. During plaintiff's deposition, the only doctor identified was plaintiff's primary care physician, Dr. Austria. (Plaintiff's Dep. 116:19-23).

2. Plaintiff did not identify any other doctors and averred that she did not consult or receive treatment or diagnoses from any other medical providers or counselors for any alleged non-economic injury associated with this case. (Plaintiff's Response to Defendant's First Interrogatory No. 9).

   **LEGAL STANDARD**

The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline,* 188 F.Supp.2d 1287, 1291 (D. Kan. 2002) (internal quotations omitted). "'A trial court has broad discretion to determine whether evidence is relevant' and to exclude irrelevant evidence." *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1193 (10th Cir. 2004) (quoting *Hill v. Bache Halsey Stuart Shields, Inc.,* 790 F.2d 817, 825 (10th Cir.1986)).

The Federal Rules of Evidence define "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence," and the fact is of consequence. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Further, the Federal Rules of Evidence exclude any otherwise relevant evidence if, among other things, its "probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Evidence is unfairly prejudicial for purposes of Rule 403 when it has an undue tendency to suggest a decision on an improper basis.

**ARGUMENTS AND AUTHORITIES SUPPORTING EXCLUSION OF EVIDENCE**

Defendant requests that the court exclude any evidence, testimony, inquiry, or argument regarding the following:

**1.    After-hours devotional gatherings**

That the Secretary of State occasionally held after-hours religious devotional gatherings in his office. Plaintiff alleges that Rucker told her grandmother, Margie Canfield, that plaintiff was terminated, in part, due to plaintiff's lack of church attendance. The devotional gatherings held in the Secretary's office are not church services, and Rucker's alleged statement cannot be construed as an express or implied reference to those gatherings. Plaintiff's attendance, or lack thereof, at

any devotional gathering in the Secretary's office is not an alleged motivating factor for plaintiff's discharge. Evidence regarding these devotional gatherings is irrelevant and any potential probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading or inflaming the passions of the jury. *See* F.R.E. 401-403.

Defendant anticipates plaintiff may seek to admit such evidence by arguing or inquiring about the constitutionality, legality, or propriety of engaging in religious expression in the workplace or by introducing evidence about the absence of similar religious activity in other government workplaces. Any concerns are heightened in this case because it involves a public employer. This case does not allege a violation of the Establishment or Free Exercise Clauses of the First Amendment. Evidence about the occurrence, constitutionality, or appropriateness, or lack of religious activity in a public employer's workplace will prejudice Defendant by: (1) attempting to inflame the passions of the jury by arguing or suggesting that such activity violates the First Amendment; and (2) distract or confuse the jury from focusing on the gravamen of whether plaintiff's alleged lack of church attendance was a motivating factor for her discharge.

Such concerns are especially warranted in this case because current jurisprudence confirms that the devotionals in the Secretary's office do not violate the First Amendment. These devotionals occurred after the close of business, in the Secretary's office, are ordinarily attended by a handful of employees, and attendance is voluntary. "[T]here is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Capital Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753-765-66 (1995) (emphasis in original). The Constitution protects the right of public employees to engage in private and voluntary religious

expression in a public workplace so long as the religious activity does not interfere with the public employer's normal operations. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 108 (2001).

"[P]eople do not give up their free-exercise or free-speech rights when they become government employees" and the mere fact that such religious activity "occurs in a government setting does not render it unconstitutional." *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004). Courts have held that private religious expression of public employees within the public workplace before, during, or after normal business hours does not violate the Establishment Clause. *See Wigg v. Sioux Falls Sch. Dist. 49-5*, 382 F.3d 807, 815 (8th Cir. 2004) (public school teacher's participation in after-school religious club is private speech); *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1212 (9th Cir. 1996) (public agency's ban of all workday religious expression of computer analyst not justified by Establishment Clause concerns); *Eder v. City of N.Y.*, No. CIV. 13013, 2009 WL 362706 (S.D.N.Y. Feb. 12, 2009) (private prayer groups at school and prayers at faculty holiday party were private speech).

Indeed, private religious speech in a government setting is protected by the Free Exercise and Free Speech Clauses of the First Amendment. *See Widmar v. Vincent*, 454 U.S. 263, 269 (1981). The types of religious speech protected by those clauses includes: prayer to open official government meetings, *Marsh v. Chambers*, 463 U.S. 783, 786-87 (1983); voluntary and periodic prayers, Bible references, and affirmations of Christianity by a public employee-supervisor during normal business hours, *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 656-57 (8th Cir. 1995); and an employer's holding of voluntary devotionals or prayer meetings, *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140 (5th Cir. 1975). Here, the devotionals in the Secretary of State's Office are undoubtedly protected by the Free Exercise and Free Speech Clauses because these meetings

occurred after business hours, did not interfere with the normal operations of the KSOS Office, and attendance was voluntary. *See Pinette*, 515 U.S. at 765, *Good News Club*, 533 U.S. at 108.

### 2. Distribution of religious materials

That non-employees of the SOS Office periodically come into the KSOS Office and distribute religious materials to some employees or that there was a lack of the same or similar activities in other government workplaces. Plaintiff may invoke this activity in an attempt to have the jury conclude or infer that it violates the First Amendment or is otherwise inappropriate in a public workplace. Such evidence is irrelevant to the issues in this case, would prejudice defendant, and would likely confuse, mislead, or inflame the passions of the jury. Regardless, the distribution or display of religious materials in a public workplace is private religious expression that does not violate the First Amendment. *Tucker*, 97 F.3d at 1215 (holding religious materials posted on public agency bulletin board did not violate Establishment Clause).

Likewise, the court should also exclude any evidence, argument, or reference by lay witnesses expressing their opinion about the propriety, legality, or constitutionality of the distribution of religious literature in a public workplace. Any such opinion is wholly irrelevant and inadmissible. Generally, a witness may not state his or her opinion as to legal standards or questions of law. *Oakland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

### 3. Attorney discipline proceeding(s)

That any witness was alleged to have violated legal professional or ethical rules or was investigated, interviewed, or disciplined in connection with alleged violations of such rules. Several potential witnesses, including Secretary of State Kobach and Assistant Secretary of State Rucker, are licensed attorneys. A disciplinary board found that Rucker violated two provisions of the Kansas Rules of Professional Conduct (KRPC) in connection with responses Rucker submitted

to the Kansas Supreme Court during oral argument in *Alpha Medical Clinic v. Anderson*, 280 Kan. 903, 128 P.3d 364 (2006). Rucker was informally admonished—the least serious form of discipline—for his conduct. Nevertheless, the disciplinary board specifically found that certain statements Rucker made to the court during oral argument "were accurate."

The court should exclude this evidence because evidence of a "wrong or other act" is inadmissible to prove character or similar action consistent with a character trait. *See* F.R.E. 404(b)(1). Such evidence is irrelevant and any probative value is substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury. *See* F.R.E. 403. The court should also exclude such evidence for impeachment purposes. This evidence does not bear on Rucker's veracity or honesty as a witness because certain information conveyed by Rucker was accurate. This evidence is also not valid impeachment evidence because it is neither opinion or reputation evidence nor evidence of a criminal conviction. *See* F.R.E. 608-609.

The court should exclude any evidence or reference to the allegations, investigations, and findings of any attorney disciplinary proceedings. Any limine order on this topic should also encompass the subject-matter and individuals involved in the *Alpha Medical Clinic* lawsuit and the subsequent litigation that arose from that case.

### 4.     Other litigation participated in by Secretary Kobach

Any evidence, argument, or inquiry regarding: (1) any cases in which Secretary Kobach has participated or provided legal representation that are unrelated to and do not involve the allegations in this case; and (2) any past or pending disciplinary proceedings or investigations that arose out of any such unrelated litigation. The scope of this limine topic includes, but is not limited to, the on-going litigation in *Fish et al. v. Kobach*, Case No. 16-2105-JAR-JPO, as well as the recently initiated and related investigation by the Kansas Supreme Court's disciplinary office.

The issues and allegations in the *Fish* lawsuit are wholly unrelated to the issues and allegations in this case. Any evidence, mention, or inquiry into the *Fish* lawsuit, or any other unrelated litigation, are irrelevant and would only confuse, mislead, distract, or inflame the passions of the jury. Similarly, the recent announcement by the Kansas Supreme Court's attorney disciplinary office of an investigation into a complaint that arose out of events from the *Fish* lawsuit is also unrelated, and thus, irrelevant to this case. Furthermore, any judicial or administrative findings, orders, or disciplinary proceedings from unrelated litigation are not valid forms of impeachment evidence concerning a witness' veracity. *See* F.R.E. 608-609. The court should prohibit this category of evidence and argument because it is unduly prejudicial and would only serve to confuse, mislead, distract, or inflame the passions of the jury. *See* F.R.E. 401-403.

### 5. Veracity of witnesses

That any witness or any individual(s) that observed, gave statements, was questioned, or otherwise testified regarding this case are honest, trustworthy, reliable, truthful, credible, or possess or are known to have other substantially similar character traits. Evaluating the credibility of witnesses is a task for the jury. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Any argument or testimony about an individual's veracity, honesty, trustworthiness, or reliability is subjective opinion that is inadmissible as substantive evidence. *Int'l Paper Co. v. Standard Indus., Inc.*, 389 F.2d 99, 102 (10th Cir. 1968). Furthermore, the court should exclude reputation or opinion evidence designed to bolster a witness' veracity. Such evidence is only admissible to rehabilitate a witness "after the witness's character for truthfulness has been attacked." *See* F.R.E. 608(a).

### 6. Liability or other insurance

That Defendant had or did not have a policy of liability insurance or that the State of Kansas might be responsible for paying any judgment which may be rendered in favor of Plaintiff. Such evidence is irrelevant, prejudicial, and inadmissible pursuant to F.R.E. 411.

### 7. Financial condition evidence

Any mention of the financial wherewithal of the State of Kansas. Plaintiff may attempt to enter into evidence the financial status of Defendant. Such information is irrelevant to Plaintiff's claim, the financial status of Defendant is irrelevant and inadmissible, and any potential probative value of such financial information is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* F.R.E. 401 – 403; *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th Cir. 1983).

The court should also exclude any evidence or argument concerning alleged embezzlement, fiscal mismanagement, bookkeeping irregularities, or other financial difficulties experienced by the Kansas Republican Party during Secretary Kobach's tenure as party chairman. This evidence is unrelated to the issues in this case and has no probative value in determining whether any alleged religious bias or discrimination was a motivating factor in plaintiff's termination. Such evidence is irrelevant, unduly prejudicial, and would confuse, mislead, or inflame the passions of the jury. *See* F.R.E. 401-403. This evidence is also inadmissible character evidence. *See* F.R.E. 404-405.

### 8. Allegation that Rucker asked Margie Canfield to discharge plaintiff

Any evidence or argument that Rucker asked plaintiff's grandmother, Margie Canfield, to terminate plaintiff's employment. Rucker testified that when he spoke with Margie about hiring plaintiff, he asked Margie to be the individual that would break the bad news to plaintiff in the event that she would need to be terminated from the KSOS Office. In short, the KSOS Office had

the authority to terminate plaintiff's employment, but any such termination would be communicated to plaintiff through Margie. Any evidence, inquiry, or argument that Margie was to actually terminate plaintiff's employment at the KSOS Office is irrelevant, contrary to the evidence, and would confuse or mislead the jury.

### 9. Media Coverage regarding Secretary Kobach

Any evidence or argument about a June 13, 2017 NY Times article concerning Secretary Kobach or any other media coverage, stories, or articles concerning Secretary Kobach. Any such news articles or media coverage are inadmissible hearsay and should be excluded. *See* F.R.E. 801(a). Furthermore, the NY Times article cited by plaintiff's counsel is irrelevant and contains editorial opinion about activities in which Secretary Kobach is involved that are completely unrelated to the issues in this case. The content of this NY Times editorial article (and other similar articles) would prejudice defendant and would do nothing other than confuse, mislead, distract, or inflame the passions of the jury. *See United States v. Wittig*, No. 03-40142-JAR, 2005 WL 758605, at *4 (D. Kan. Apr. 4, 2005) (noting that "highly editorialized articles are more inflammatory than mere accounts of the factual developments in a case").

### 10. Attorney-Client Privileged Communications

Any evidence, inquiry, or argument about communications that occurred between KSOS Office in-house attorneys and employees, including, but not limited to Karen Dilliehunt. The meetings in question occurred after plaintiff's termination and were convened to allow attorneys to inquire about plaintiff's period of employment in the KSOS office. In fact, these meetings occurred shortly after plaintiff filed the E.E.O.C.-KHRC complaint that precipitated this action.

Communications between an attorney and client for investigative or fact-finding purposes are protected from disclosure. *See* F.R.E. 502. The privilege is intended to "encourage full and

frank communication" between an attorney and a client based upon the recognition that "sound legal advice or advocacy … depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). With an organizational client, the attorney-client privilege extends to communications with "middle management or non-management personnel" as well as those with "top executives" and high-level employees with decision-making authority. *Id.* at 391-92. However, it is employees empowered to act on behalf of the organization (*i.e.*, managers, officers, or directors) that hold the attorney-client privilege and control the ability to waive it. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985). An organization's "employee cannot waive the [organization's] privilege." *Sprague v. Thorn Am., Inc.*, 129 F.3d 1355, 1371 (10th Cir. 1997).

The communications implicated here occurred during meetings involving KSOS in-house attorneys and KSOS employees. The fact that these communications occurred after plaintiff filed her administrative complaint supports the fact that the information exchanged during these meetings was so that attorneys could obtain full, accurate, and complete information in order to render competent and effective legal advice and representation in relation to the pending discrimination complaint. Thus, the court should enter an order prohibiting plaintiff from inquiring or intruding into these privileged conversations.

### 11. Settlement discussions or negotiations

That settlement discussions took place, including the nature, substance, existence, or non-existence of any settlement discussions or amounts of money demanded, offered, or rejected during mediation conferences or at other times between the parties and/or their representatives. Such information is irrelevant, prejudicial, and inadmissible pursuant to F.R.E. 408.

### 12. Progressive discipline

There should be no evidence, argument or comment that the KSOS Office was required to use the progressive discipline policy outlined in its employee handbook, to follow EEOC recommended practices, or to conduct an exhaustive investigation before discharging plaintiff. The court should exclude such evidence because it is irrelevant, misstates the law, is confusing, and could mislead the jury. Plaintiff was an at-will employee and could be discharged for any reason that did not violate federal law or Kansas public policy. *Conrad v. Bd. of Johnson Cnty. Comm'rs*, 237 F.Supp.2d 1204, 1254-55 (D. Kan. 2002). The issue is not whether the decisions of the KSOS Office were "wise, fair, or correct" but whether religious discrimination was a motivating factor in plaintiff's discharge. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Thus, the court should prohibit plaintiff from introducing any evidence, inquiry, or argument about any purported requirement or need to use progressive discipline, the unfairness of actions taken by the KSOS Office, or other similar terminology or argument.

**13.    Treatment related to claim(s) for non-economic damages**

Any mention of treatment, consultation and/or therapy for any claimed damages in this action. Plaintiff was served with an Interrogatory seeking the identity of any psychiatrist(s), psychologist(s), counselor(s), or other mental health care personnel that treated plaintiff for any psychological or emotional injury allegedly caused by the KSOS Office. Plaintiff identified her primary care physician but did not specify that she consulted her physician for any injury related to this lawsuit. Plaintiff indicated that she did not consult any other medical personnel.

The purpose of discovery is to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, to provide litigants with access to proper information with which to develop their respective contentions, to present their respective sides on issues framed by the pleadings, and to preserve evidence, prevent unjust surprise, and formulate issues for trial. Plaintiff

was required to identify medical personnel consulted and treatment received for her non-economic damages; she failed to provide such information. The presentation of any such evidence at trial would amount to surprise. Accordingly, the court should exclude such evidence.

### 14. Expert testimony

Any evidence, testimony, or argument or references to any evidence or statements from retained or non-retained experts. The Pretrial Order indicates that both parties will not present expert testimony. (See ECF 37, p. 9, § 8.c.) The purpose of expert witness discovery is to eliminate concealment and surprise. *See Gordon v. CompResults, LLC*, No. 11-2547-EFM, 2013 WL 656886, at *8-9 (D. Kan. Feb. 22, 2013). The court should exclude evidence or argument about expert testimony because such evidence would amount to unfair surprise.

### 15. Front-pay

Plaintiff should be precluded from presenting any evidence, argument, inquiry, or statement regarding the nature and extent of any claim to front-pay. "Front pay is an equitable remedy awarded by the court (not the jury)." *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005). The purpose of a front pay award is "to make the plaintiff whole" but a court "'must avoid granting the plaintiff a windfall.'" *Id.* at 1000-01 (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir. 1997)).

Plaintiff is not seeking front-pay; plaintiff has stipulated her claim for $35,000 in economic damages is for lost wages and benefits incurred from November 18, 2013 to June 15, 2015. Furthermore, plaintiff is precluded from obtaining front-pay for any time after June 15, 2015 because plaintiff worked for Blue Cross/Blue Shield of Kansas and received a wage and benefit package that was superior to that received at the SOS Office. Thus, the court should exclude any claim or evidence related to front-pay because such an award would amount to a windfall.

### 16. Objection(s) to discovery requests

That counsel for defendant objected to discovery requests. Plaintiff may attempt to introduce the legal objections to curry favor with the jury. Legal objections are issues of law for the Court to decide, not questions of fact for the jury. Further, defendant requests this Court restrict plaintiff's use of any discovery responses in that all legal objections should be redacted from any discovery responses, and only sworn interrogatory responses are subject to potential admission.

Respectfully submitted,

**FISHER, PATTERSON, SAYLER & SMITH, LLP**
3550 S.W. 5th Street
Topeka, Kansas 66606
Office: (785) 232-7761 | Fax: (785) 232-6604
Email:  tmock@fisherpatterson.com
           dcooper@fisherpatterson.com
           slowry@fisherpatterson.com


**s/Terelle A. Mock**

| | |
|---|---|
| Terelle A. Mock | #21465 |
| David R. Cooper | #16690 |
| Seth A. Lowry | #24292 |

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on the 4th day of August, 2017, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gary E. Laughlin, #07118
HAMILTON, LAUGHLIN, BARKER, JOHNSON & JONES
3649 Burlingame Road, Suite 200
Topeka, Kansas 66611
Off:  785 267-2410 | Fax:  785-267-2942
glaughlin@hamiltonlaughlin.com

I further certify that I caused the foregoing document and notice of electronic filing to be mailed by first-class mail to the following non-CM/ECF participant: No one.

**s/Terelle A. Mock**
Terelle A. Mock

112.30405